THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| DAVID KELLER, | : |
| --- | --- |
| **Plaintiff** | : |
| v. | : 3:09-CV-2534 |
| | : (JUDGE MARIANI) |
| CITY OF SCRANTON, et al., | : |
| **Defendants** | : |

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Defendants' Motion for Summary Judgment (Doc. 58) which has been briefed fully and is ripe for determination. In addition, on March 21, 2013, counsel for both parties participated in oral argument before this Court. For the reasons that follow, the motion will be granted.

Plaintiff's claims for punitive damages against Defendants Mitchell and Seitzinger, the two remaining defendants in this case,[1] will be dismissed. Furthermore, assuming that Defendants' failure to provide actual notice to Plaintiff of the pending demolition of his commercial property was a violation of his procedural due process rights, the Court will grant qualified immunity to Defendants Mitchell and Seitzinger because the law was insufficiently clear to alert them that they were required to check the publicly available

---

[1] In a previous motion to dismiss, Judge Caputo granted the motion in part and dismissed the City of Scranton as a defendant. (Doc. 25). Defendant Mitchell is the former Director of Public Safety and Conservation and Defendant Seitzinger is the Director of Licensing, Inspections, & Permits. (Am. Compl. at ¶¶ 3-4).

1

records to search for intervening changes in ownership interests due to tax sales and to send a second notice of demolition to those with newly-acquired ownership interests.

## II. Statement of Undisputed Facts

On September 24, 2007, Plaintiff purchased a property ("Property") located at 605-607 Cedar Avenue, Scranton, Pennsylvania at a Lackawanna County Tax Sale. (Am. Compl. at ¶ 10; see also Deed to Real Property, Doc. 10, Ex. A). The Court of Common Pleas confirmed the tax sale on November 28, 2007. (See Deed, Doc. 10, Ex. A). The Property was demolished purportedly on February 27, 2008. (City of Scranton Bureau of Engineering Memo, Doc. 59, Ex. B). After it was demolished, Plaintiff received the deed to the Property and recorded it with the Lackawanna County Recorder of Deeds Office on July 22, 2008. (Doc. 10, Ex. A).

The Property had been condemned in September 2004 and notice of condemnation had been sent through regular and certified mail and had been posted on the Property itself. (Seitzinger Dep., Doc. 59, Ex. A at 10:4-11:3). On March 31, 2006, the City of Scranton scheduled the Property for demolition. (Id. at 15:13-16:16). At that time, Defendant Seitzinger informed the record and actual owner of the Property, Lawrence Solomon, Ltd., via written correspondence that the Property was scheduled for demolition. (March 31, 2006 correspondence, Doc. 59, Ex. D). This correspondence was sent via regular and certified mail, and a copy of the notice was posted on the property itself. (Seitzinger Dep. at 16:25-17:4). Both defendants testified that the standard procedure for every condemnation

2

and demolition was to locate the owners using the Lackawanna County Assessor's Office as the "main search" to determine where to send notices of both condemnation and demolition. (Seitzinger Dep., 10:4-11:14, 12:8-20, 14:11-15; Mitchell Dep., 10:2-23, 12:13-16).

According to the Lackawanna County Assessor's Office, as of the date of demolition in February 2008, Lawrence Solomon, Ltd. was still the record owner of the Property. (Seitzinger Dep. at 18:1-8). Defendants acknowledged that condemned properties are sometimes transferred to new owners via tax sales. (Seitzinger Dep. at 13:24-14:5; Doc. 59, Ex. I, Mitchell Dep. at 14:13-15:3).

### III. Standard of Review

. Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the

non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

## IV. Analysis

To establish a defendant's liability under 42 U.S.C. § 1983 "for deprivation of procedural due process rights, a plaintiff must [prove] that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir. 2013). "Property interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 194-95 (3d Cir. 2009) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* (internal citation and quotation marks omitted).

Defendants first argue that because Plaintiff did not have marketable title as of the dates of condemnation and demolition, he had no protected property interest in the

4

Property. However, Plaintiff did not need to have marketable title to obtain a property interest in the Property. It was sufficient for Plaintiff to have had an equitable interest in the Property to entitle him to procedural due process safeguards. "[T]he purchaser at a tax sale does acquire an ownership interest in the premises, a principle we now affirm and proclaim as law." *Pivirotto v. City of Pittsburgh*, 528 A.2d 125, 128 (Pa. 1987) ("the successful bidder at the tax sale is entitled to compel conveyance by treasurer deed, and thus, he is the equitable owner."). Therefore, it is irrelevant to this Court that Plaintiff initiated a quiet title action against Lawrence Solomon, Ltd.

Defendants then ask this Court to find that their attempts to notify those with a property interest in the property were sufficient. It is undisputed that Defendants posted notices of condemnation in September 2004 and demolition in March 2006 on the Property itself and mailed notices by regular and certified mail to Lawrence Solomon, Ltd., the record and actual owner.[2] It is also undisputed that Defendants never sent notice of any kind to Plaintiff.[3] The dispositive question is whether Defendants were required to send notice to Plaintiff given that he acquired his equitable interest in the Property in September 2007,

---

[2] For the purposes of this motion, it is irrelevant whether Lawrence Solomon, Ltd. had actual notice of the condemnation or demolition.

[3] Keller testified that when he "looked at" the Property in September 2007, "there were no [condemnation] postings on the front of the building, on any of the windows or the doors." (Keller Dep., Doc. 59, Ex. H, 49:1-20). Defendants' statements that a notice of condemnation was posted on the Property itself and Keller's testimony that he never saw any such notices on the Property do not create a genuine dispute of material fact to be preserved for trial because posting the notice on a property is insufficient under *Pivirotto* for actual notice. 528 A.2d at 134 (Nix, C.J., dissenting) ("Thus, the issue presented under these facts was not the fairness of the notice by posting but whether the city had, in fact, posted this property. The majority today has gratuitously engrafted a further impediment upon [condemnation and demolition] process.").

5

*after* it had been condemned and scheduled for demolition, and notices of such actions already had been given to the prior owner, Lawrence Solomon, Ltd.

At oral argument, the parties focused primarily on whether Defendants' actions in searching only the Lackawanna County Assessor's Office were sufficient to determine who was the record owner and who was entitled to notice of condemnation and/or demolition. Although this point is not the central issue of the case, the Court will address it because of the issue's importance and the likelihood that it will arise again. Defendants cite to *Tracy v. County of Chester Tax Claim Bureau*, in which the Supreme Court of Pennsylvania held that "[a] government body is not required to make 'extraordinary efforts' to discover the identity and address of a person whose property interests are likely to be significantly affected by a tax sale, but only reasonable efforts." 489 A.2d 1334, 1338 (Pa. 1985).

Plaintiff cites to *Pivirotto* to address this point. There, the defendant-city had condemned and demolished a property after the plaintiff had bought it at a tax sale, without ever having provided actual notice of the demolition to the purchaser-plaintiff. The Court observed that those in the "Bureau of Building Inspection, who were responsible for condemnation and demolition, had ready access to the fact that the Pierce Street property was the subject of a sale for delinquent taxes, because the treasurer's office customarily sends lists of properties sold at the treasurer's sale to the bureau." 528 A.2d at 127. The Court also stated, "[c]ity officials may expect that properties with housing code violations might also be subject to sales for tax delinquencies, and that persons in addition to the

6

owners indicated in the deed registry might have an ownership interest in dilapidated properties." *Id.* at 129.

In this case, Defendants acknowledged that homes with housing violations could also be the subject of tax sales. (Seitzinger Dep. at 13:24-14:5; Mitchell Dep. at 14:13-15:3). It is undisputed that information pertaining to tax sales is a matter of public record and is publicly available at the Lackawanna County Tax Claim Bureau. Counsel for the parties agreed that the Lackawanna County Tax Claim Bureau maintains a list of properties sold at tax sales (Unofficial Transcript, 9:1-4, 16:14-21, 17:3-4), which is a source of information that Defendants could have explored. Confirmation of the tax sale by the Court of Common Pleas, along with other information pertaining to this tax sale, also was publicly available from the Lackawanna Court Clerk of Judicial Records. (*See* Ex. 1 of this Opinion). In other words, Plaintiff's purchase of the Property was a matter of public record and could have been identified without difficulty by resort to the records of the Lackawanna County Tax Claim Bureau and the Lackawanna County Clerk of Judicial Records.

Ultimately, the Pennsylvania Supreme Court held:

> It is not unreasonable to expect the bureau to ascertain whether properties have been sold, and then to make contact with the city treasurer's office to ascertain the identity of the purchaser at the tax sale. Failing this, the city is liable to purchasers at tax sales when properties sold by the city are demolished without actual notice to the purchaser.

528 A.2d at 129. *Pivirotto* is instructive as to what efforts must be taken "to discover the identity and address of a person whose property interests are likely to be significantly

7

affected" (*Tracy*, 489 A.2d at 1338) by condemnation and/or demolition, and the Court finds that checking the Lackawanna County Assessor's Office alone is insufficient.

However, this finding does not address the ultimate issue in this case. *Pivorotto* is factually distinguishable from this case in two key respects: Plaintiff acquired his equitable interest in the Property *after* it had been condemned and scheduled for demolition, and there was a two-year gap between the time the Property was scheduled for demolition and when it was actually demolished.[4] At the time the Property was condemned and scheduled for demolition, Defendants sent notices to the correct owner, Lawrence Solomon, Ltd.

*Pivorotto* is silent, however, as to whether Defendants were required to provide notice to Plaintiff, given that he acquired an ownership interest in the Property after the requisite notices had been sent to Lawrence Solomon, Ltd. Given the two-year gap between the time the Property was scheduled for demolition and the time of its actual demolition, should Defendants have checked the publicly available records to determine whether there had been any intervening ownership changes? Under *Pivorotto*'s general holding, the Court will assume there was such a requirement in that instance to check the publicly available records, including the Lackawanna County Tax Claim Bureau.[5] *See*

---

[4] The Court recognizes that *Pivirotto* was an action for negligent demolition, which is not a constitutional issue. However, because Plaintiff never received actual notice of the demolition, he was deprived of an opportunity to cure the housing defects to prevent the Property's demolition. Further, the *Pivirotto* court observed: "[a]lthough the matter *sub judice* involves a condemnation notice and not a tax sale notice, both situations involve governmental taking of private property and the same safeguards apply." 528 A.2d at 129.

[5] It is fortunate for Defendants that this case does not turn on whether their efforts to inform those with ownership interests by resorting to searches only at the Lackawanna County Assessor's Office are sufficient under *Pivorotto*. Going forward, the Court urges Defendants and the City of Scranton to abide by the strictures of *Pivorotto* when sending notices of condemnation and demolition and avail themselves of the publicly accessible records to locate persons with ownership interests in properties.

8

*Pivirotto*, 528 A.2d at 129 ("Failing this, the city is liable to purchasers at tax sales when properties sold by the city are demolished without actual notice to the purchaser.").

Defendants' next argument is that even if they violated Plaintiff's procedural due process rights, they are entitled to qualified immunity. "Qualified immunity shields government officials from suit even if their actions were unconstitutional as long as those officials' actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Burns v. Pa. Dep't of Corrections*, 642 F.3d 163, 176 (3d Cir. 2011) (internal citations and quotation marks omitted).

> For the official to have fair warning that his or her actions violate a person's rights, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. However, this is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Id.* (internal citations and quotation marks omitted). The Court agrees with Defendants. Though the *Pivirotto* case was decided over twenty-five years ago, the facts of that case are materially different from the facts of this case in two respects: 1) here, Plaintiff acquired an equitable interest in the Property *after* it had already been condemned and scheduled for demolition, and 2) there was a nearly two-year gap between the time the Property was scheduled for demolition and when it was actually demolished. Because Defendants sent the required notice to the actual owner, Lawrence Solomon, Ltd. at the time the Property was condemned and scheduled for demolition, they believed they fulfilled their minimum duties under the law. However, given the delay between March 2006 and February 2008, it

9

is unclear whether the law requires municipalities to conduct another record search to determine whether there have been any intervening changes in property ownership. Because the law is unclear as to this point, the Defendants could not have been expected to know whether they were required to conduct another record search and send out a second notice, if necessary. Therefore, the Court will grant qualified immunity to Defendants.

Finally, the Court will grant Defendants' motion with respect to Plaintiff's claims for punitive damages. "Punitive damages may be awarded under 42 U.S.C. § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000) (internal citations and quotation marks omitted). "The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Id.* (internal citations and quotation marks omitted).

At oral argument, counsel for Plaintiff conceded that he "can't in good conscience say that [Defendants] acted outrageous[ly] and wanton[ly] following the procedures that are done in every case." (Unofficial Transcript, 23:3-5). "After the depositions and discovery, it was clear that those are the procedures that are commonly followed, and that's understandable." (*Id.* at 23:7-9). The Court agrees. Both Seitzinger and Mitchell testified that the standard procedure for every condemnation and demolition was to locate the owners using the Lackawanna County Assessor's Office as the "main search" to determine

where to send the appropriate notices. (Seitzinger Dep., 10:4-11:14, 12:8-20, 14:11-15; Mitchell Dep., 10:2-23, 12:13-16).

Because the standard practice was to search the records of the Lackawanna County Assessor's Office to determine record owners of properties, this was the procedure Defendants used to send notices regarding the Property, and Plaintiff has pointed to no evidence that Defendants deviated from the norm, their actions cannot be said to have been willful or malicious. Therefore, the Court will dismiss the punitive damages claims against Defendants.

## V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 58) will be granted. The punitive damages claims against Defendants Mitchell and Seitzinger will be dismissed. Assuming that Defendants' failure to provide actual notice to Plaintiff of the pending demolition of his commercial property was a violation of his procedural due process rights, the Court will grant qualified immunity to Defendants Mitchell and Seitzinger because the law was insufficiently clear to alert them that they were required to check the publicly available records to search for intervening changes in ownership interests due to tax sales and send a second notice of demolition to those with newly-acquired ownership interests. A separate Order follows.

Robert D. Mariani
United States District Judge